## COMMONWEALTH vs. THOMAS L. ALLEN.

Bristol.    Jan. 8. — Feb. 27, 1880.    COLT & LORD, JJ., absent.

The attorney general has the right, in the name and behalf of the Commonwealth, at his own discretion, to file an information against one usurping a public office; the court has no authority to grant or to withhold leave to file it; and the mention of relators in the information is mere surplusage, which does not affect the validity of the information, or the form of the judgment to be rendered thereon.

The lapse of four months and a half after the usurpation of a public office does not bar an information in the nature of a quo warranto, by the attorney general, in the name of the Commonwealth, against the intruder.

Under the St. of 1876, c. 80, providing that, "in all cases in which appointments are directed to be made by the mayor and aldermen in any city of the Commonwealth, the mayor shall have the exclusive power of nomination, being subject however to confirmation or rejection by the board of aldermen," a person nominated can only be confirmed by receiving the votes of a majority of the aldermen voting upon the question; the authority to appoint police officers, conferred by the St. of 1876, c. 92, upon the mayor and aldermen of the city of New Bedford, must be exercised in the manner prescribed by the former statute; and if there is anything repugnant to this in an ordinance of the city, it is void.

If a person nominated for an office by the mayor of a city is not duly confirmed in the manner prescribed by the St. of 1876, c. 80, the facts, that the mayor announces that he is confirmed, without objection by the aldermen, that they approve his bond after he has taken the oath of office, and that he performs the duties of the office, do not supply the want of the proper vote of confirmation.

An information by the attorney general in the name and behalf of the Commonwealth is the proper process to oust a person who holds de facto, and not de jure, a public office which is vacated only by death, resignation or removal of the incumbent.

INFORMATION in the nature of a quo warranto, filed August 11, 1879, by the attorney general, in behalf of the Commonwealth, and at the relation of two citizens of New Bedford, alleging that the defendant was usurping the office of chief of police of the city of New Bedford. The case, as it appeared from the information, answer, and demurrer to the answer, on which it was reserved by *Soule*, J., for the determination of the full court, was as follows:

The St. of 1876, c. 80, provides that "in all cases in which appointments are directed to be made by the mayor and aldermen in any city of the Commonwealth, the mayor shall have the exclusive power of nomination, being subject however to

confirmation or rejection by the board of aldermen; but if a person so nominated shall be rejected, it shall be the duty of the mayor to make another nomination within a month from the time of such rejection."

The St. of 1876, *c.* 92, entitled " An act to amend the charter of the city of New Bedford," provides, in § 1, that " the mayor and aldermen of the city of New Bedford may, from time to time, appoint such police officers and constables for said city as they may judge necessary, subject to removal by the mayor; " by § 3, authorizes the mayor and aldermen to require any person appointed a police officer or constable to give a bond with sureties; by § 5, was to take effect upon its acceptance by the city council of New Bedford; and was duly accepted on May 4, 1876.

An ordinance of the city of New Bedford, passed on January 7, 1879, provides that " the police department shall consist of a chief of police, one deputy chief of police, two captains of police, and such number of lieutenants and other policemen as the city council may from time to time direct, all the members of which department shall be appointed and removed in accordance with the provisions of the charter and laws of the state; and they shall severally hold their offices until vacated by death, resignation, or until they may be removed by the mayor." It is further provided by an ordinance of said city, that, " whenever there is a vacancy in any of the offices aforesaid, the mayor shall nominate persons to fill them, and in case the board of aldermen shall reject any nomination for the police force made to them, the mayor shall make new nominations to fill the vacancies within two weeks after such rejection; " that " before entering upon his duties each member of the police department thus appointed shall be sworn to the faithful discharge of the duties of his appointment; " that " the chief of police and the deputy chief of police and the two captains of police shall severally give bonds to the city treasurer, in amounts and with sureties to the satisfaction of the mayor and board of aldermen, for the faithful performance of the duties of their office."

On January 8, 1879, a vacancy existed in the office of chief of police of said city, and on that day William T. Soule, the mayor of the city, nominated the defendant to the board of aldermen.

to fill such vacancy, and put the question in this form. "Shall the nomination be confirmed?" Two aldermen voted in favor of, and four against, confirmation. On January 23, the mayor again nominated the defendant to fill the said vacancy, and put the question in the same way. Three aldermen voted in favor of, and three against, confirmation. Eight times afterwards the mayor made the same nomination, with the same result; and on March 25, 1879, again nominated the defendant, and put the question in this form: "Shall the nomination be rejected?" No objection was made to the form of putting the question; three of the aldermen voted in favor of, and three against, rejection; and the mayor thereupon declared the nomination not rejected, and announced that the defendant was appointed chief of police. No objection was made to this announcement, and the meeting thereupon adjourned without day. On March 26, 1879, the defendant took the oath to faithfully perform the duties of his office as chief of police, and gave a bond as required by law, which bond was approved by the mayor, in accordance with an order passed by the board of aldermen; and has since performed the duties of the office; and no other person is now claiming the office.

*W. C. Parker, Jr.*, for the Commonwealth.

*F. A. Milliken*, for the defendant.

GRAY, C. J. This is an information at common law, not regulated by any statute, for the usurpation of an office, which the attorney general has the right to file *ex officio* in the name and behalf of the Commonwealth, at his own discretion, and leave to file which the court has no authority to grant or to withhold; and the mention of relators is mere surplusage, and does not affect the validity of the information or the form of the judgment to be rendered thereon. *Commonwealth* v. *Fowler*, 10 Mass. 290. *Goddard* v. *Smithett*, 3 Gray, 116. Cole on Informations, 196. The lapse of time between the defendant's assumption of the office and the institution of this proceeding, whatever effect it might have as against a private person, cannot bar the right of the Commonwealth suing by its attorney general.

By the St. of 1876, *c.* 80, it is enacted that, "in all cases in which appointments are directed to be made by the mayor and aldermen in any city of the Commonwealth, the mayor shall

have the exclusive power of nomination, being subject however to confirmation or rejection by the board of aldermen." The manifest intent and necessary effect of this enactment are that a person nominated by the mayor to any office must receive the votes of a majority of the aldermen voting upon the question, in order to be confirmed, and that, if he does not receive such majority of votes, his nomination is rejected. The authority to appoint police officers, conferred by c. 92 of the statutes of the same year upon the mayor and aldermen of the city of New Bedford, must be exercised in the manner prescribed by the previous statute.

The provision in the ordinance of New Bedford, that, "in case the board of aldermen shall reject any nominations for the police force, made to them, the mayor shall make new nominations to fill the vacancies within two weeks after such rejection," evidently contemplates rejection by failure to confirm, and, if construed as the defendant contends, would be repugnant to the statute, and therefore void.

The mayor could not, by the form of putting the question, or of announcing the result, constitute the defendant chief of police, without the requisite majority of the board of aldermen; nor could the silence of the aldermen at the time of such announcement, nor their subsequent approval of the defendant's bond after he had taken the oath of office and become chief of police de facto, supply the want of the necessary vote of the board of aldermen to make him such de jure.

The defendant holding de facto, and not de jure, an office which, under the ordinance of 1879, does not expire with the year, but will be vacated only by the death, resignation or removal of the incumbent, this information is the proper process to oust him from the office to which he has no legal title. *Attorney General* v. *Simonds*, 111 Mass. 256. *Commonwealth* v. *Hawkes*, 123 Mass. 525.                    *Judgment of ouster.*